UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GREG GILBERT, as administrator of the Estate of James Allman, deceased; and SONJA TODD, as personal representative for Estate of Barbara Piper Allman, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>ALARM ONE INC., and ADT LLC,<br><br>Defendants. | Case No.: 2:19-cv-00374-MHH |

## MEMORANDUM OPINION AND ORDER

This action is before the Court on a motion to remand. (Doc. 9). The plaintiffs, as personal representatives of the estates of James Allman and Barbara Piper Allman, allege that Alarm One, Inc. and ADT, LLC, installers and providers of home monitoring services, are liable for the deaths of James and Barbara Allman in a March 19, 2017 fire. The plaintiffs assert five state law causes of action against the defendants: negligence, wantonness, breach of contract, breach of the Alabama Extended Manufacturers Liability Doctrine, and breach of warranty. (Doc. 1-2, pp. 2–9).

1

Despite the presence of Alarm One, a non-diverse defendant, ADT removed the plaintiffs' complaint to federal court on the basis of diversity jurisdiction. (Doc. 1). In its notice of removal, ADT argues that the plaintiffs fraudulently joined Alarm One as a defendant to destroy federal jurisdiction. (Doc. 1, p. 4, ¶ 10). The plaintiffs disagree. (Doc. 9). For the reasons described below, the Court grants the plaintiffs' motion to remand.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs allege that the ADT system installed at the decedents' home caused the deaths of James and Barbara Allman during a fire. (Doc. 1-2, p. 3, ¶¶ 1–2). On March 11, 2002, the Allmans bought from Alarm One an ADT system equipped with a heat detector and fire alarm. (Doc. 1-2, p. 5, ¶¶ 15–19). The plaintiffs allege that the Allmans paid all monthly charges related to the alarm system. (Doc. 1-2, p. 5, ¶ 20).

On March 19, 2017 a fire started in the Allmans' kitchen. (Doc. 1-2, p. 5, ¶ 21). The plaintiffs allege that the alarm system did not alert Mr. and Mrs. Allman of the fire or notify authorities. (Doc. 1-2, p. 5, ¶¶ 22, 24). The plaintiffs allege that Mr. and Mrs. Allman died because of "the negligence and breach of contract of [ADT and Alarm One]." (Doc. 1-2, pp. 5-6, ¶¶ 24, 26).

In this action, the plaintiffs seek punitive damages for the deaths of Mr. and Mrs. Allman.[1] In their initial state court complaint, the plaintiffs named as defendants ADT Alabama, Corp., Alarm One, Inc., and multiple fictitious defendants. (Doc. 1-1, pp. 3–5). In their first amended complaint, the plaintiffs eliminated as a named defendant Alabama ADT and added defendant ADT, LLC, alleging that ADT, LLC is a "foreign corporation with its principal place of business in Boca Raton, Florida." (Doc. 1-1, pp. 34–35; Doc. 1-2, pp. 2–4).[2] The plaintiffs allege that Alarm One and ADT are liable for negligence, wantonness, breach of contract, breach of Alabama's Extended Manufacturers Liability Doctrine, and breach of warranty. (Doc. 1-2, pp. 2–9).

Citing 28 U.S.C. §§ 1332 and 1441, ADT removed this action to federal court. (Doc. 1). ADT contends that Alarm One is not a legitimate defendant because Alarm One assigned all contractual rights and liabilities to ADT before the fire. (Doc. 1, p. 4). ADT also contends that Alarm One is a non-existent company and therefore not a proper party in interest. (Doc. 1, p. 4). The plaintiffs ask the Court to return this action to state court. (Doc. 9).

---

[1] Under Alabama law, only punitive damages are available in a wrongful death case such as this.

[2] The plaintiffs filed their first amended complaint on January 22, 2019. (Doc. 1-2, p. 2). On January 30, 2019, the state circuit court dismissed without prejudice the plaintiffs' claims against ADT Alabama Corp. (Doc. 1-3, p. 2).

**ANALYSIS**

For federal jurisdiction to exist under 28 U.S.C. § 1332(a), there must be complete diversity of citizenship, and the amount in controversy must exceed $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a); *Underwriters at Lloyd's, London v. Osting-Scwinn*, 613 F.3d 1079, 1085 (11th Cir. 2012). "[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal." *PTA-FLA v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016). Generally, when jurisdiction is lacking because, for example, a defendant is a citizen of the state in which the plaintiff filed suit, then a district court must remand the action to state court. But "if a defendant shows that 'there is no possibility the plaintiff can establish a cause of action against the resident defendant,' then the plaintiff is said to have fraudulently joined the non-diverse defendant." *Florence v. Crescent Resources, Inc.*, 484 F.3d 1293, 1297 (11th Cir. 2007) (quoting *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006)) (footnote omitted). "In that situation, the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." *Florence*, 484 F.3d at 1297; *see also Henderson*, 454 F.3d at 1281.

The Eleventh Circuit Court of Appeals has identified three scenarios in which a non-diverse defendant may be fraudulently joined: (1) "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-

diverse) defendant"; (2) "when there is outright fraud in the plaintiff's pleading of jurisdictional facts"; and (3) "where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citations omitted). The removing party bears the heavy burden of proving fraudulent joinder. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see generally Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

When deciding a motion to remand, a district court must resolve jurisdictional doubts in favor of remand. *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("[A]ll uncertainties as to removal jurisdiction are to be resolved in favor of remand."). With respect to the first fraudulent joinder scenario, the district court may deny a motion to remand when the defendants prove "by clear and convincing evidence that there is no possibility that [the plaintiff] can establish a cause of action against the resident defendant." *Henderson*, 454 F.3d at 1283 (internal citations omitted). A plaintiff does not have to a have winning case; "he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287. "In making its determination, the district court must

5

evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

### A. Sufficiency of the Complaint

The plaintiffs assert both tort and contract claims. In their amended complaint, the plaintiffs do not indicate which defendant is alleged to have committed each act. (Doc. 1-2). ADT argues that "each of plaintiff's claims does nothing more than generally incorporate the same fact allegations and recite legal conclusions, preventing ADT and the Court from deciphering Alarm One's alleged role in Plaintiff's loss." (Doc. 20, p. 10). But a state court plaintiff does not have to comply with federal pleading standards when filing a state court complaint. *See Henderson*, 454 F.3d at 1284 ("[T]he decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands."). Because the plaintiffs originally filed this action in an Alabama state court, this Court must apply Alabama's notice-pleading standard to evaluate the amended complaint. ALA. RULES OF CIV. PRO. RULE 8 (A); *see Mitchell v. Mitchell*, 506 So. 2d 1009, 1010 (Ala. 1987) ("[P]leading technicalities are now largely avoided and . . . pleading of legal conclusions is not prohibited, as long as the requisite fair notice is provided thereby

6

to the opponent."). The plaintiffs' allegations in their amended complaint appear to comply with Alabama's notice-pleading standard.

Because plaintiffs have not differentiated between ADT and Alarm One and because the Court must resolve doubts in favor of the plaintiffs, the Court assumes that the plaintiffs address each allegation in the amended complaint to both Alarm One and ADT. *See Hampton v Georgia-Pacific, LLC.*, No. 11-0363-KD-N, 2011 WL 5037403, at *3 (S.D. Ala. Oct. 24, 2011) ("When multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually."). Accordingly, in Counts I and II of the amended complaint, the plaintiffs allege that Alarm One was negligent and wanton in the furnishing and installation of the Allmans' alarm system. (Doc. 1-2, p. 6–7). The plaintiffs also allege that Alarm One breached the Alabama Extended Manufacturer's Liability doctrine by furnishing a defective alarm system (Count IV). (Doc. 1-2, p. 8). Given the allegations that Alarm One installed the alarm system at issue, that Alarm One owed a duty to the Allmans to properly furnish and distribute the alarm system, that the alarm failed, and that the Allmans died as a result of the failure, the plaintiffs have alleged colorable tort claims against Alarm One.[3]

---

[3] The plaintiffs also allege that Alarm One breached its contractual duties to the Allmans by failing to properly furnish and install the alarm system (Count III) and breached warranties that the alarm system was reasonably fit and suitable for its stated purpose (Count V). (Doc. 1-2, pp. 7, 9). The

7

**B. Fraudulent Joinder**

ADT argues that the plaintiffs' claims really are against it exclusively because ADT was the party responsible for monitoring the alarm system when the fire occurred in 2017. ADT argues that the plaintiffs have not demonstrated "how Alarm One—a company that ceased operations in 2009—could be liable to Plaintiffs for ADT's monitoring of the Allmans' alarm system on March 19, 2017." (Doc. 20, p. 9). And ADT submits that its assumption of all contractual duties from Alarm One prior to the fire leaves no room for claims against Alarm One. (Doc. 24, pp. 13–15).

In support of its arguments, ADT has provided an affidavit from ADT employee Barbara Runa. In her affidavit, Ms. Runa states that in March 2002, when Alarm One installed the alarm system at the Allmans' house and programmed the system to send alarm signals to ADT's customer monitoring center, Alarm One was an ADT authorized dealer. (Doc. 24-1, p. 4, ¶ 8). Ms. Runa explains that ADT purchased the Allman account from Alarm One on April 3, 2002 and retained James Allman as a customer until after his death. (Doc. 24-1, p. 4, ¶¶ 9–10). Because Ms. Runa's affidavit establishes that Alarm One installed the system at issue, ADT cannot demonstrate "by clear and convincing evidence that there is no possibility"

---

Court does not consider these claims because under Alabama law, the plaintiffs may not pursue breach of contract or warranty claims in a wrongful death action. (Doc. 24, p. 11) (citing *Alabama Powersport Auction, LLC v. Wiese*, 143 So. 3d 713, 720 (Ala. 2013)).

that the plaintiffs can prove that Alarm One was negligent or wanton when it distributed and installed the system or that Alarm One is liable under the AEMLD for its distribution and installation of a defective system and that the purportedly deficient distribution and installation caused the Allmans' deaths many years later. *See Henderson*, 454 F.3d at 1283.

ADT's contractual assumption of all duties under the Allman contract does not prevent the plaintiffs from proving a tort claim against Alarm One for negligence, wantonness, or a violation of the AEMLD. ADT argues that the only duty Alarm One owed the Allmans was a contractual duty to install the alarm system. (Doc. 24, pp. 8–9). ADT accurately states the general rule in Alabama that "mere failure to perform a contractual obligation is not a tort." *Barber v. Business Products Center, Inc.*, 677 So. 2d 223, 228 (Ala. 1996). But there is a duty to avoid misfeasance in the performance of contractual obligations. *Morgan v. South Cent. Bell Telephone Co.*, 466 So. 2d 107, 114 (Ala. 1985). "Entering into a bargaining transaction, pursuant to which one promises to do something, does not alter the fact that there was a preexisting obligation to act with reasonable care to avoid harm." *Morgan*, 466 So. 2d at 114. If Alarm One's "misperformance involve[d] a foreseeable, unreasonable risk of harm" to the Allmans, then Alarm One may be liable in tort regardless of the assignation of the contractual duties to ADT. *Morgan*, 466 So. 2d at 114. Mindful of the Eleventh Circuit's caution not to "weigh the merits

of a plaintiff's claim beyond determining whether it is an arguable one under state law," the Court will not assess the scope of the duty that Alarm One arguably owed to the Allmans because of its installation of the alarm system in the Allmans' house. *Crowe*, 113 F. 3d at 1538.

ADT asserts that the Allmans contractually waived their right to sue Alarm One for negligence. (Doc. 24). ADT points to several provisions in the Allmans' contract with Alarm One, including this one:

> The subscriber does not desire this contract to provide for full liability of dealer and agrees that dealer shall be exempt from liability, loss, damage, or injury due directly or indirectly to occurrences, or consequences therefrom, which the service or equipment is designed to detect or avert . . .

(Doc. 24, p. 11).[4] ADT suggests this provision is like provisions upheld in *Saia Food Distributors and Club, Inc.*, *v. Security Link*, 902 So. 2d 46 (Ala. 2004), and *Fox Alarm Co. v. Wadsworth*, 913 So. 2d 1070 (Ala. 2005). In both *Saia Food* and *Fox Alarm*, the plaintiffs alleged the defendant companies were negligent in providing monitoring services after the systems were successfully installed. *Saia Food*, 902 So. 2d at 48 ("Although initially functional, shortly after it was installed the system began displaying a 'zone-error' message."); *Fox Alarm, Co.*, 913 So. 2d

---

[4] The provision also may be read as an exculpatory clause. To determine if an exculpatory clause is invalid as contrary to public policy, Alabama courts apply a six-part test. *Morgan*, 466 So. 2d at 117. Because this analysis is better left to the state courts, it is enough to say that this provision does not establish by clear and convincing evidence that there is no possibility that the plaintiffs could prove their claim against Alarm One.

at 1072 ("Fox Alarm was employed to monitor the alarm system . . . . Fox's dispatcher decided not to inform the police or Wadsworth of these signals . . .."). Here, the plaintiffs contend that Alarm One negligently or wantonly installed the alarm system, causing the system to malfunction years later. The plaintiffs also contend that Alarm One is liable under the AEMLD for its distribution and installation of a defective system. Neither *Saia Food* nor *Fox Alarm* is a wrongful death action. Thus, *Saia Food* and *Fox Alarm* are distinguishable from this case, and a state court may determine whether, under Alabama law, the provisions in the Alarm One contract that ostensibly limit Alarm One's liability apply to wantonness or AEMLD claims or apply at all in wrongful death cases.

Alarm One's viability as a company does not necessarily make its joinder in this action fraudulent. The question is whether the plaintiffs can possibly prove Alarm One's liability, not the plaintiffs' ability to recover on the claim. "The motive for joining such a defendant is immaterial, even when the defendant is judgment-proof, or when the plaintiff is ultimately found not to have had a cause of action against the [non-diverse] defendant." *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962) (internal marks and citation omitted).[5] While ADT submits evidence that Alarm One's incorporator has filed for and been declared bankrupt,

---

[5] *See Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent in the Eleventh Circuit Court of Appeals decisions that the Fifth Circuit Court of Appeals rendered before October 1, 1981).

the plaintiffs have submitted a printout from the Alabama Secretary of State website showing Alarm One to be an active company in the state of Alabama. (Doc. 9, pp. 26–27). The Court must resolve the conflict in favor of the plaintiffs. Moreover, as the plaintiffs point out, even if Alarm One currently lacks assets, Alarm One may have had a policy of insurance in effect in 2002 that would cover a judgment against Alarm One for its conduct in 2002 when it installed the alarm system in the Allmans' house. (Doc. 27, p. 6). A non-party's representation in state court that Alarm One did not have liability insurance coverage in 2009 (Doc. 20-3, p. 2) does not shed light on potential coverage in 2002, particularly given the fact that Alarm One went out of business in 2009 (Doc. 20, pp. 3, 6).

The record here does not support ADT's contention that the plaintiffs lacked a bona fide intent to serve and proceed against Alarm One.

> [A] 'bona fide intent to have [an action] immediately served' can be found when the plaintiff, at the time of filing, performs all the tasks required to serve process. . . . On the other hand, when the plaintiff, at the time of filing, does not perform all the tasks required to effectuate service and delays a part of the process, a lack of the required bona fide intent to serve the defendant is evidenced.

*Precise v. Edwards*, 60 So. 3d 228, 233 (Ala. 2010). When the plaintiffs initially filed this action, they provided an address for Alarm One and requested service of process by certified mail. (Doc. 1-1, pp. 30-31); *compare ENT Assoc. of Alabama v. Hoke*, 223 So. 3d 209 (Ala. 2016) (plaintiff's failure to provide the clerk with defendant's addresses or give alternative instructions on how to serve defendants

12

showed a lack of bona fide intent). The address provided matched the one listed by the Alabama Secretary of State. *Compare* (Doc. 1-1, p. 10) with (Doc. 9, pp. 26–27). The plaintiffs attempted service on Alarm One again when they filed their amended complaint in state court and after the defendants removed the case to federal court. (Doc. 1-1, p. 98; Doc. 19). Thus, ADT has not established by clear and convincing evidence that the plaintiffs a lack of bona fide intent to serve Alarm One.[6]

**CONCLUSION**

For the reasons stated above, ADT has not established "by clear and convincing evidence that there is no possibility that [the plaintiff] can establish a cause of action against the resident defendant." *Henderson.*, 454 F.3d at 1283. Accordingly, ADT has not carried its burden to demonstrate that the plaintiffs fraudulently joined Alarm One as a defendant.

Therefore, the Court grants the plaintiffs' motion and remands this case to the Circuit Court of Jefferson County, Bessemer Division.

**DONE** and **ORDERED** this November 19, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that Alarm One's presence in this case gives ADT a potential empty chair defense. If, following remand, the plaintiffs choose to voluntarily dismiss Alarm One, then ADT may have a remedy under 28 U.S.C. § 1446(c)(1).

13